# United States Court of Appeals for the Federal Circuit

---

**INTERNATIONAL CUSTOM PRODUCTS, INC.,**
*Plaintiff-Appellee,*

v.

**UNITED STATES,**
*Defendant-Appellant.*

---

2013-1176

---

Appeal from the United States Court of International Trade in No. 07-CV-0318, Judge Gregory W. Carman.

---

Decided: April 14, 2014

---

GREGORY H. TEUFEL, Eckert, Seamans, Cherin & Mellott, LLC, of Pittsburgh, Pennsylvania, argued for plaintiff-appellee. With him on the brief was JEREMY L.S. SAMEK.

EDWARD F. KENNY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With him on the brief were STUART F. DELERY, Assistant Attorney General and JEANNE E. DAVIDSON, Director, of Washington, DC, and JASON M. KENNER, Trial Attorney, of New York, New York. Of counsel on the brief was YELENA SLEPAK, Attorney, Office of the Assistant

Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York. Of counsel was AMY M. RUBIN, Attorney, International Trade Field Office, Civil Division, United States Department of Justice, of New York, New York.

---

Before O'MALLEY, REYNA, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

This is an appeal from the United States Court of International Trade ("CIT") regarding the classification of certain white sauce imports under the Harmonized Tariff Schedule of the United States ("HTSUS"). Following a request from International Custom Products, Inc. ("ICP"), the United States Customs and Border Protection ("Customs") issued New York Ruling Letter D86228 ("the Ruling Letter") classifying ICP's white sauce as "sauces and preparations therefor" under HTSUS 2103.90.9060 (1999). Years later, Customs issued a notice of action reclassifying all pending and future entries of white sauce as "[b]utter and . . . dairy spreads" under HTSUS 0405.20.3000 (2005) ("the Notice of Action"), which increased the tariff by approximately 2400%.

After protesting and paying duties on a single entry, ICP filed a claim in the CIT, alleging the Notice of Action improperly revoked the Ruling Letter without following the procedures required by 19 U.S.C. § 1625(c) (2006). The CIT granted ICP's requested relief and ordered Customs to reliquidate the merchandise under the "[s]auces and preparations therefor" heading required by the Ruling Letter. Because the CIT properly held the Notice of Action effectively revoked the Ruling Letter without following the necessary procedures, this court affirms.

BACKGROUND

I.

During the relevant time period, ICP was in the business of importing and distributing food ingredients to food product manufacturers. In 1998, ICP requested a ruling from Customs regarding the classification of white sauce under the HTSUS. ICP's request described that white sauce "may be used as the base for a gourmet sauce or salad dressing," J.A. 1115, and listed its ingredients as "Milkfat, Water, Vinegar (and/or lactic acid and/or citric acid), Zanthum [*sic*] gum, Carboxymethelcellulose [*sic*], Sodium Phosphate and/or Sodium Citrate."[1] J.A. 942. Milkfat was listed as the dominant ingredient, at a concentration of 72–77%.

On January 20, 1999, Customs issued the Ruling Letter, which classified white sauce under HTSUS 2103.90.9060 (1999) for "sauces and preparations therefor" ("the sauces heading"), with a duty rate of 6.6% ad valorem.[2] ICP imported large quantities of white sauce under this classification for over five years. In March 2004, Customs notified ICP that it was initiating a new investigation into the proper HTSUS classification of ICP's white sauce and requested information from ICP regarding its white sauce entries. ICP responded to Customs' inquiries by providing samples of its white sauce for testing. The samples were materially identical to the ingredient list and concentrations described in ICP's ruling request and the Ruling Letter. ICP also reported that its largest customer of white sauce at the

---

[1]   Xanthan gum and carboxymethylcellulose are used to thicken liquids.

[2]   This subheading has since been renumbered as HTSUS 2103.90.9091 (2005), which imposes a duty rate of 6.4% ad valorem.

time was Schreiber Foods, Inc. ("Schreiber"), but stated it did not know Schreiber's intended use for the white sauce. After further investigation, Customs discovered that Schreiber used the white sauce to make different types of cheese.

Based on this information, a Customs import specialist requested reconsideration of the Ruling Letter on November 17, 2004. The relevant Customs branch sent an interoffice memorandum to the Office of Regulations and Rulings ("OR&R"), which is responsible for reviewing and issuing ruling letters, and recommended that the Ruling Letter be revoked. OR&R disagreed, finding the Ruling Letter was correct for the "circumstances presented." J.A. 1036. However, the OR&R determined the Ruling Letter did not apply to the pending white sauce entries, because those entries would be used to make cheese.

In April 2005, over six years after issuing the Ruling Letter, Customs issued the Notice of Action stating that all eighty-six of ICP's pending entries of white sauce, and all future entries, would be classified under HTSUS 0405.20.3000 (2005) for "[d]airy spreads: [b]utter substitutes . . . : [c]ontaining over 45 percent by weight of butterfat" ("the dairy spreads heading"), which carried a substantially higher duty rate than the sauces heading.[3] The Notice of Action explained that Customs' lab analysis "reveal[ed] that this product is a spreadable, water-in-oil type emulsion with 78% milk fat," and was therefore properly classified under the dairy spreads heading. J.A. 1046. The Notice of Action said nothing about the principal use of white sauce.

---

[3] Subheading 0405.20.3000 carries a duty rate of $1.996 per kilogram plus applicable safeguard duties. When applied to ICP's white sauce entries, this amounts to an increase of approximately 2400%.

## II.

The Notice of Action marks the beginning of a lengthy litigation history between ICP and the United States, including a prior appeal to this court. In the first round of litigation spanning from 2005 through 2007, ICP challenged the Notice of Action in the CIT without first exhausting the protest procedures necessary to establish jurisdiction under 28 U.S.C. § 1581(a) (2000), the traditional jurisdictional basis for the CIT to review a Customs liquidation decision. The CIT instead exercised jurisdiction under § 1581(i), which provides jurisdiction when other subsections of § 1581 are "manifestly inadequate." *Int'l Custom Prods., Inc. v. United States* (*ICP I*), 374 F. Supp. 2d 1311 (Ct. Int'l Trade 2005). The CIT reasoned that Customs' abrupt classification change had brought ICP to the "brink of bankruptcy," and found § 1581(a) was "manifestly inadequate" because the protest procedures it required would put ICP out of business. *Id.* at 1321–22. On the merits, the CIT held the Notice of Action was null and void and ordered Customs to reliquidate ICP's white sauce entries under the sauces heading required by the Ruling Letter. *Id.* at 1333.

On the Government's appeal, this court held the CIT lacked jurisdiction under § 1581(i), because the normal requirements for jurisdiction under § 1581(a) were not manifestly inadequate. *Int'l Custom Prods., Inc. v. United States* (*ICP II*), 467 F.3d 1324 (Fed. Cir. 2006). This court accordingly reversed the CIT's exercise of jurisdiction, vacated the decision on the merits, and remanded for the CIT to dismiss ICP's complaint. *Id.* at 1328.

The case currently pending before this court relates to white sauce Entry Number 180-0590029-7 ("the Entry"), which Customs liquidated pursuant to the Notice of Action's dairy spreads heading on June 29, 2007. Consistent with this court's decision in *ICP II*, ICP filed a protest challenging Customs' classification of the Entry.

Customs denied ICP's protest and ICP filed the instant action in the CIT under § 1581(a).

In its complaint, ICP alleged the Notice of Action was null and void because it improperly revoked the Ruling Letter without following the notice and comment procedures set forth in 19 U.S.C. § 1625(c) and without due process of law. ICP argued Customs should instead have liquidated the Entry under the sauces heading, as required by the Ruling Letter. On March 31, 2008, the CIT denied-in-part the Government's motion to dismiss for failure to state a claim upon which relief may be granted. *Int'l Custom Prods., Inc. v. United States* (*ICP III*), 549 F. Supp. 2d 1384 (Ct. Int'l Trade 2008). It held ICP had stated a cognizable claim that the Notice of Action violated 19 U.S.C. § 1625(c) and the Due Process Clause of the Fifth Amendment. The CIT also denied the parties' cross motions for summary judgment, finding that genuine disputes of material fact required trial. *Int'l Custom Prods., Inc. v. United States* (*ICP IV*), No. 07-cv-00318, 2009 WL 205860 (Ct. Int'l Trade Jan. 29, 2009).

The CIT then granted the parties' joint motion to bifurcate the trial, and proceeded on ICP's claim alleging a violation of § 1625(c)(1). Section 1625(c)(1) requires Customs to follow multiple procedural requirements when issuing an "interpretive ruling or decision" that would "modify . . . or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days." 19 U.S.C. § 1625(c)(1). In particular, Customs must publish the proposed ruling or decision in the Customs Bulletin, provide a comment period of at least 30 days after such publication, and publish the final decision in the Customs Bulletin within 30 days after the close of the comment period ("notice and comment procedures"). *Id.* § 1625(c). The final ruling or decision "become[s] effective 60 days after the date of its publication." *Id.*

After a bench trial, the CIT found the Ruling Letter applied to the Entry because "the white sauce contained in the Entry materially conformed to the description in the Ruling Letter." *Int'l Custom Prods., Inc. v. United States* (*ICP V*), 878 F. Supp. 2d 1329, 1349 (Ct. Int'l Trade 2012). It also rejected the Government's argument that ICP had made material misstatements that rendered the Ruling Letter void ab initio. The CIT concluded the Notice of Action's reclassification of all pending and future entries of white sauce effectively revoked the otherwise controlling Ruling Letter without adherence to § 1625(c)'s notice and comment procedures. Accordingly, the CIT held the Notice of Action was void and ordered Customs to reliquidate the Entry pursuant to the Ruling Letter. *Id.* at 1350.[4]

The CIT held there was "no just reason" to delay appeal, and therefore directed entry of final judgment pursuant to Ct. Int'l Trade R. 54(b). The Government filed this timely appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

## DISCUSSION

Section 1625(c) requires Customs to undergo notice and comment procedures before it may issue "a proposed *interpretive ruling or decision* which would— (1) *modify . . . or revoke* a prior interpretive ruling or decision which has been in effect for at least 60 days" (emphases added).[5]

---

[4]    The CIT did not determine de novo the proper classification of the Entry, because the only issue before it was the procedural "question of whether Customs violated ICP's right to notice and comment procedures, contained in 19 U.S.C. § 1625(c)(1)." *ICP V*, 878 F. Supp. 2d at 1350.

[5] Section 1625(c), titled "Modification and revocation," provides in full:

On appeal, the Government argues § 1625(c)'s notice and comment procedures do not apply because the Notice of Action did not effectively revoke the Ruling Letter. It also contends a notice of action can never amount to an "interpretive policy type decision within the meaning of 19 U.S.C. § 1625(c)(1)." *See* Appellant's Br. 1, 12. This court reviews the CIT's statutory interpretation de novo, *Bauerhin Techs. Ltd. P'ship v. United States*, 110 F.3d 774, 776 (Fed. Cir. 1997), and reviews its factual findings for clear error, *Deckers Corp. v. United States*, 532 F.3d 1312, 1315 (Fed. Cir. 2008).

---

A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c).

The Ruling Letter that Customs issued in 1999 was an "interpretive ruling" subject to § 1625(c). *See* 19 U.S.C. § 1625(a) (stating an interpretive ruling includes "any ruling letter"); *see also Cal. Indus. Prods., Inc. v. United States*, 436 F.3d 1341, 1351 (Fed. Cir. 2006). Once issued, the Ruling Letter "represent[ed] the official position of the Customs Service" with respect to ICP's entries of white sauce and was "binding on all Customs Service personnel . . . until modified or revoked." 19 C.F.R. § 177.9(a) (2007); *see also id.* § 177.9(b)(2) (ruling letters that "set[ ] forth" the proper HTSUS classification "appl[y] only with respect to transactions involving articles identical to the sample submitted with the ruling request or to articles whose description is identical to the description set forth in the ruling letter"). By 2005, when the Notice of Action was issued, the Ruling Letter had been in effect for over 60 days, so any interpretive decision or ruling modifying or revoking it was subject to § 1625(c)'s notice and comment procedures.

On appeal, the Government concedes the white sauce Entry materially conformed to the Ruling Letter, and that the Ruling Letter thus applied to the Entry. Reply Br. 3. It nevertheless argues the Notice of Action did not effectively revoke the Ruling Letter. The Government relies on the OR&R's statement that the Ruling Letter should not be revoked because it was "correct for [the] circumstances presented." J.A. 1036. The OR&R also advised that the Ruling Letter did not apply to the pending and future white sauce entries because those entries would be used to make cheese, not sauce. According to the Government, this shows the Ruling Letter remained in effect, and was not revoked by the Notice of Action.

As the Government now concedes, OR&R erred in finding the Ruling Letter did not apply to the white sauce entries. Because the relevant white sauce entries were subject to the Ruling Letter, Customs Service personnel were "b[ound]" to liquidate them under the sauces head-

ing until the Ruling Letter was "modified or revoked." 19 C.F.R. § 177.9. The Notice of Action contradicted the Ruling Letter by stating that all pending and future imports of white sauce "must be classified" under the dairy spreads heading. J.A. 1046. This reclassification of all shipments rendered the Ruling Letter without any force or effect, and thus effectively revoked it. Customs confirmed this effective revocation by liquidating the Entry under the dairy spreads heading, consistent with the Notice of Action, instead of applying the otherwise binding Ruling Letter. To the extent the Government argues the Ruling Letter was not revoked because OR&R *believed* the Ruling Letter did not apply to the Entry, the Government is mistaken. The Ruling Letter was "binding on all Customs Service personnel," regardless of Customs' beliefs regarding its scope. *See* 19 C.F.R. § 177.9(a).

The Government nevertheless argues a Notice of Action is merely a "courtesy notice" that "cannot revoke or 'effectively' revoke a ruling." Appellant's Br. 14. According to the Government, a Notice of Action is an "entry specific document" that is "mailed only to the importer," and has no effect on a prior policy or ruling by Customs. *Id.* at 31–32. The Government relies on a Customs regulation stating that Customs must issue a notice of action "if the port director believes that the entered rate or value of any merchandise is too low, or if he finds that the quantity imported exceeds the entered quantity." 19 C.F.R. § 152.2. This provision shows only that notices of action are intended to serve as entry-specific notifications. There is no indication, however, that Customs is immune from § 1625(c)'s requirements when it issues a notice of action that effectively reclassifies all imports of a certain type.

Contrary to the "entry specific document" the Government describes, the Notice of Action in this case "applied to *all*" pending and future entries of white sauce. J.A. 1366 (emphasis added); *see also* J.A. 1366 (stating

"*[a]ll shipments*" of white sauce "must be classified" under the dairy spreads heading) (emphasis added). This broad proclamation effectively revoked the classification set forth in the Ruling Letter.

The legislative history of the North American Free Trade Agreement Implementation Act, Pub. L. 103-182, § 623, 107 Stat. 2057 (1993), which enacted § 1625's procedural protections, states: "'importers have a right to be informed about customs rules and regulations, as well as interpretive rulings, and to expect certainty that the Customs Service will not unilaterally change the rules without providing importers proper notice and an opportunity for comment.'" *Precision Specialty Metals, Inc. v. United States*, 182 F. Supp. 2d 1314, 1328 (Ct. Int'l Trade 2001) (quoting S. Rep. No. 103-189, at 64 (1993)); *see also* H.R. Rep. No. 103-361(*l*), at 124 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2674 (stating § 1625 "will provide assurances of transparency concerning Customs rulings and policy directives").

Once Customs issued the Ruling Letter, ICP and other importers were entitled "to expect certainty" that Customs "'w[ould] not unilaterally change'" the classification "'without providing proper notice and an opportunity for comment.'" *See Precision Specialty Metals*, 182 F. Supp. 2d at 1328 (quoting S. Rep. No. 103-189, at 64 (1993)). The Notice of Action's reclassification of all pending and future white sauce entries after over six years of ICP's reliance on the Ruling Letter was just the type of "change [in] the rules" that § 1625(c) was designed to address. *Id.* (quoting S. Rep. No. 103-189, at 64 (1993)). Customs must be held to the broad scope of its reclassification even though it was communicated through a notice of action.

Courts in analogous situations have declined to elevate form over substance. For example, notice and comment procedures required by the Administrative

Procedures Act ("APA") typically apply to substantive rulemakings, but also apply when an agency's interpretation "has *in effect* amended its rule." *Alaska Prof'l Hunters Ass'n, Inc. v. Fed. Aviation Admin.*, 177 F.3d 1030, 1034 (D.C. Cir. 1999) (emphasis added). In *Alaska Professional Hunters*, the Federal Aviation Administration ("FAA") issued a notice revising a prior interpretation of a regulation. *Id.* at 1030. The D.C. Circuit rejected the FAA's argument that the notice was "merely an interpretive rule," and instead held it was effectively a substantive rulemaking requiring APA notice and comment procedures. *Id.* at 1033–34. Just as the "interpretive rule" label did not exempt the FAA from APA notice and comment procedures in *Alaska Professional Hunters*, the "notice of action" label does not protect Customs from the broad scope of its action in this case. In accordance with these principles, the CIT did not err in holding Customs' Notice of Action effectively revoked the Ruling Letter.

The Government further contends a notice of action can never be an "interpretive ruling or decision" and therefore cannot trigger the procedural protections of § 1625(c). It relies on *California Industrial Products*, 436 F.3d at 1351, which interpreted § 1625(c)'s reference to an "interpretive ruling" in light of § 1625(a)'s express definition of that term "as '*including* any ruling letter, or internal advice memorandum.'" *Id.* (quoting 19 U.S.C. § 1625(a)) (emphasis added). Although *California Industrial Products* shows that an interpretive ruling *includes* ruling letters and internal advice memoranda, such documents are exemplary, not exhaustive. The Government's reliance on § 1625(c)'s legislative history is similarly unpersuasive because the cited portion states only that the amended § 1625 applies to "interpretive rulings, ruling letters, or internal advice memorandum," but does not suggest that interpretive rulings could never include a notice of action. *See* Appellant's Br. 23–24 (citing H.R.

Rep. No. 103-361-I, *reprinted in* 1993 U.S.C.C.A.N. 2252, 2674).[6]

The CIT did not err in holding that the Notice of Action in this case amounts to an interpretive ruling or decision subject to § 1625(c)'s notice and comment procedures. The Notice of Action was an interpretive document applying the HTSUS to the specific facts of all pending and future white sauce entries. J.A. 1046; *see* 19 C.F.R. § 177.1(d)(1) (defining "ruling"). Although the Notice of Action was not issued by the OR&R, it resulted from the considered deliberations of the OR&R, which determined the Ruling Letter did not apply to the Entry. *See ICP III*, 549 F. Supp. 2d at 1392 (describing Customs' "months-long deliberative process" resulting in the Notice of Action). Customs was required to comply with § 1625(c) when it used the Notice of Action to revoke the previously-applicable Ruling Letter.

------

[6] Relatedly, the Government argues there is no "proper cause of action" based on § 1625(c)(1), and contends ICP should have instead alleged a violation of 19 C.F.R. § 177.9. Appellant's Br. 11–12. Even assuming the Government is correct that ICP could not allege a § 1625(c) violation (which it is not), the CIT found Customs *also* violated "§ 177.[9](b)(2) when it decided not to apply the Ruling Letter to the Entry, despite the conformance of the Entry." *ICP V*, 878 F. Supp. 2d at 1349 (modified to correct a typographical error). The Government does not appeal this finding, which independently supports the CIT's "reliquidation of the Entry at the rate established by the Ruling Letter." *Id.* at 1350; *see also Glaxo Grp. Ltd. v. TorPharm, Inc.*, 153 F.3d 1366, 1371 (Fed. Cir. 1998) ("[A]n appellate court may affirm a judgment of a district court on any ground the law and the record will support so long as that ground would not expand the relief granted.").

Finally, the Government argues it is administratively infeasible to apply § 1625(c)'s notice and comment procedures to the Notice of Action. It contends that doing so would require "an incalculable number of other 'decisions' . . . to undergo notice and comment, and publication," which would be "enormously time consuming" and "serve no purpose whatsoever." Appellant's Br. 26–27; *see also id.* at 9 (arguing the CIT's holding would "improperly subject[ ] countless confidential and entry specific documents to notice and comment that were never intended to fall within [§ 1625(c)(1)'s] scope"). However, the CIT did not hold that *all* notices of action are now subject to notice and comment procedures. The CIT held only that the Notice of Action in this case—which effectively revoked the Ruling Letter and was issued after relevant OR&R deliberation—was subject to § 1625(c)'s procedures. To the extent the Government is not using notices of action to surreptitiously revoke ruling letters, its slippery slope argument is vastly overstated.

## CONCLUSION

For the foregoing reasons, the CIT properly held the Notice of Action is void for failure to comply with 19 U.S.C. § 1625(c)'s notice and comment procedures. This court affirms the CIT's decision ordering reliquidation of the Entry pursuant to the Ruling Letter.

## **AFFIRMED**